IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOEL A. MEDINA,                                    No. 3:23-cv-01203-HZ

                 Plaintiff,                        OPINION & ORDER

v.

COLUMBIA RIVER FIRE & RESCUE, an
Oregon Municipality; RICHARD FLETCHER,
as an individual; KELLY NILES, as an
individual; AUSTIN ZIMBRICK, as an
individual; RYAN WELBY, as an individual;
ST. HELENS PROFESSIONAL FIRE
FIGHTERS ASSOCIATION LOCAL #3215,
an Oregon nonprofit corporation; AARON
PETERSON, as an individual; AARON
SCHROTZBERGER, as an individual; LISA
STROLIS, as an individual; KYLE MELTON,
as an individual; RHONDA MELTON, as an
individual,

                 Defendants.


Robert F. Blackmore
Ronald G. Guerra
Innova Legal Advisors, P.C.

1 Centerpointe Dr., Ste 530
Lake Oswego, OR 97035

      Attorneys for Plaintiff

Lori K. DeDobbelaere
Kilmer Voorhees & Laurick, PC
2701 NW Vaughn St., Ste 780
Portland, OR 97210

      Attorney for Defendant Rhonda Melton

HERNÁNDEZ, District Judge:

      Plaintiff sued Defendant Rhonda Melton[1] for defamation and aiding and abetting discrimination and retaliation. First Am. Compl. ("FAC"), ECF 35. Defendant moves to dismiss the claims against her under Oregon's anti-SLAPP (strategic lawsuit against public participation) statute. Def. Mot. to Strike and Dismiss, ECF 37. For the following reasons, the Court declines to grant Defendant's motion at this time and orders that discovery be conducted on the Motion.

## BACKGROUND

      Plaintiff Joel Medina was at all material times the Fire Chief of Columbia River Fire & Rescue ("CRFR"). FAC ¶ 3. He brings claims against his former employer and some of its current and former employees and current board members, as well as the firefighters' union and some of its members. *Id.* ¶¶ 4-14. All Defendants other than Defendant Rhonda Melton have answered the FAC. ECF 36, 39.

      Plaintiff alleges that he was hired by Defendant CRFR in December 2020. FAC ¶ 21. He later noticed budget irregularities in CRFR. *Id.* ¶¶ 25-26. In particular, he alleges that in January 2023 an employee discovered that several CRFR employees "were improperly enrolled in the PERS police/fire classification" and that the problem was reported up to Plaintiff as chief. *Id.* ¶

---

[1] The Court notes that the correct spelling of Defendant's first name is "Ronda." Def. Mot. 1 n.1.

28. He alleges that he corrected the error in a February 2023 memo, specifying which individuals were improperly enrolled. *Id.* ¶ 30. He alleges that a criminal investigation into the misclassification was opened. *Id.* ¶ 32. Defendants began opposing his tenure as chief and tried to discredit him. *Id.* ¶ 33. Plaintiff alleges that Defendant Rhonda Melton made defamatory statements with the goal that the CRFR Board terminate him. *Id.* ¶ 26. He alleges that Defendant Kyle Melton is the son of Defendant Rhonda Melton, and that Kyle Melton informed Rhonda Melton of the misclassification issue. *Id.* ¶ 34. Plaintiff alleges that Defendant Rhonda Melton "was a PERS retiree that had been misclassified into the Police and Fire section of PERS. She was concerned that her PERS benefits would be affected and that she would lose some benefits to which she was not entitled." *Id.*

In or about April 2023, Defendant Rhonda Melton prepared and published statements on social media about Plaintiff. *Id.* ¶ 37. Plaintiff alleges that the statements were false and made with intent to defame him. *Id.* He alleges that Defendants Richard Fletcher, Ryan Welby, and Austin Zimbrick were elected to the CRFR Board of Directors in May 2023 and that all three opposed Plaintiff's leadership. *Id.* ¶¶ 39-40. On August 8, 2023, the Board—now including the three new members—held its monthly meeting and discussed the termination of Plaintiff despite not advising in the notice of meeting that Plaintiff's termination would be a topic at the meeting. *Id.* ¶¶ 48-59. The Board voted to terminate Plaintiff. *Id.* ¶ 60.

In his fifth state-law claim for discrimination and retaliation, Plaintiff alleges that Defendant Rhonda Melton made defamatory statements about Plaintiff both on social media and at board meetings. *Id.* ¶¶ 112-113. He alleges that Defendant made the statements because she was a misclassified former employee and she learned that Plaintiff was investigating

misclassification, and she wanted to avoid losing her benefits. *Id.* ¶¶ 109-112. Plaintiff's defamation claim relies on the same allegations. *See id.* ¶¶ 122-128.

Defendant filed her Motion on February 28, 2024. She attached a declaration with written text reflecting her oral statements made to the CRFR Board. Melton Decl., ECF 38. Plaintiff submits transcripts of some of Defendant's spoken remarks and copies of her Facebook posts. Medina Decl., ECF 43. In her statements, both written and spoken, Defendant criticized Plaintiff's leadership of CRFR, including his spending and hiring decisions, and advocated for him to be removed as chief. The Court will address the statements in more detail below.

**STANDARDS**

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). In response, a defendant in federal court may file a motion to strike under an applicable anti-SLAPP statute. *Vineyard v. Soto*, No. 10-CV-1481-SI, 2011 WL 5358659, at *2 (D. Or. Nov. 7, 2011); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005).

Oregon's anti-SLAPP provisions "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." *Staten v. Steel*, 222 Or. App. 17, 27, 191 P. 3d 778 (2008). A special motion to strike is treated "as a motion to dismiss under Or. R. Civ. P. 21 A and requires the court to enter a 'judgment of dismissal without prejudice' if the motion is granted." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) (applying Oregon law).

Analysis of a special motion to strike is a two-step process. "First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil

actions described in [O.R.S.] 31.150(2)." *Id.*; *see also* O.R.S. 31.150(3). "[T]he critical point is

whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's

right of petition or free speech." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 102

(2004) (referring to the California anti-SLAPP statute); *Old Republic Constr. Program Grp. v.*

*The Boccardo Law Firm*, 230 Cal. App. 4th 859, 867 (2014) (whether a cause of action arises

from protected activity "involves two subsidiary inquiries: (1) From what acts or omissions

do[es] the[] cause[] of action arise, for purposes of applying this statute; and (2) do those acts or

omissions come within the statute's definition of protected conduct?"). The required showing

may be made on the basis of the pleadings alone. *Staten*, 222 Or. App. at 31.

　　"If the defendant meets the initial burden, the burden shifts to the plaintiff to establish

that there is a probability that the plaintiff will prevail on the claim by presenting substantial

evidence to support a prima facie case." *Gardner*, 563 F.3d at 986 (quoting O.R.S. 31.150(3)).

To determine whether the plaintiff has met that burden, the court must take the facts from the

pleadings and from the supporting and opposing affidavits, O.R.S. 31.150(4), and state them "in

the light most favorable to plaintiffs." *Mullen v. Meredith Corp.*, 271 Or. App. 698, 702, 353

P.3d 598 (2015) (quotation omitted). The court must deny the motion "[i]f the plaintiff meets this

burden." O.R.S. 31.150(3). "Because the statute permits . . . early intervention in lawsuits

alleging unmeritorious causes of action . . . the plaintiff's burden of establishing a probability of

prevailing is not high." *Young v. Davis*, 259 Or. App. 497, 509, 314 P.3d 350 (2013) (internal

citations and quotations omitted).

　　Oregon courts look to California case law to construe Oregon's anti-SLAPP statute

because Oregon's law was "modeled on California statutes" and '[i]t was intended that

California case law would inform Oregon courts regarding the application of ORS 31.150 to

ORS 31.155." *Page v. Parsons*, 249 Or. App. 445, 461, 277 P.3d 609 (2012) (discussing the

Oregon anti-SLAPP statute's legislative history). However, California cases published after

Oregon enacted its anti-SLAPP statute in 2001 are "relevant, at most, only for their persuasive

value." *Handy v. Lane Cty.*, 360 Or. 605, 623 n.12, 385 P.3d 1016 (2016).

The Ninth Circuit has held that when an anti-SLAPP motion challenges only the legal

sufficiency of the claim, the court should evaluate the motion under Federal Rule of Civil

Procedure 12(b)(6). *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress, LLC*, 890

F.3d 828, 833 (9th Cir. 2018). But if the motion challenges the factual sufficiency of the claim,

the court may need to convert the motion into a motion for summary judgment and allow

discovery. *Id.* "Requiring a presentation of evidence without accompanying discovery would

improperly transform the motion to strike under the anti-SLAPP law into a motion for summary

judgment without providing any of the procedural safeguards that have been firmly established

by the Federal Rules of Civil Procedure." *Id.* at 833-34.

## DISCUSSION

Defendant has met her initial burden to show that her speech was protected under

Oregon's anti-SLAPP statute. However, factual issues preclude a determination of whether

Plaintiff is likely to succeed on his claims. The Court therefore concludes that Plaintiff is entitled

to discovery on those factual issues.

## I.    Defendant's Protected Speech or Conduct

Defendant asserts that her statements, both verbal and written, fall under two of the four

categories of protected speech in O.R.S. 31.150(2). Def. Mot. 7-8. The statute protects "[a]ny

oral statement made, or written statement or other document presented, in a place open to the

public or a public forum in connection with an issue of public interest" and "[a]ny other conduct

in furtherance of the exercise of the constitutional right of petition or the constitutional right of

free speech in connection with a public issue or an issue of public interest." O.R.S. 31.150(2)(c)

and (d). Defendant made oral statements at CRFR Board meetings and posted written statements

on the Columbia County Transparency & Accountability Facebook page. Melton Decl. ¶¶ 2-7,

Exs. 1-5; Medina Decl. ¶¶ 5, 6, 8, 11; Exs. 2, 3, 5, 8. In these statements, Defendant criticized

actions Plaintiff took as CRFR Chief and expressed concerns about CRFR leadership. Plaintiff

acknowledges that Defendant has met her initial burden to show that her statements were made

in a public forum and in connection with an issue of public interest. Pl. Resp. 3, ECF 42. The

Court agrees that Defendant has met her initial burden under the anti-SLAPP statute.

## II.    Plaintiff's Probability of Prevailing

### A.    Oregon Defamation Standard

"The elements of a claim for defamation are: (1) the making of a defamatory statement;

(2) publication of the defamatory material; and (3) a resulting special harm, unless the statement

is defamatory *per se* and therefore gives rise to presumptive special harm." *Nat'l Union Fire Ins.*

*Co. of Pittsburgh Pennsylvania v. Starplex Corp.*, 220 Or. App. 560, 584, 188 P.3d 332 (2008).

"A defamatory statement is one that would subject another to hatred, contempt or ridicule or tend

to diminish the esteem, respect, goodwill or confidence in which the other is held or to excite

adverse, derogatory or unpleasant feelings or opinions against the other." *Id.* (cleaned up). A

defamatory statement must be false. *Tubra v. Cooke*, 233 Or. App. 339, 347, 225 P.3d 862

(2010). As to the second element, "[i]n general, a statement is published when it is

communicated to a third party." *Wallulis v. Dymowski*, 323 Or. 337, 343, 918 P.2d 755 (1996).

As to the third element, "[l]ibel, that is, defamation by written or printed words, is

actionable *per se*." *Neumann v. Liles*, 358 Or. 706, 712, 369 P.3d 1117 (2016). "Spoken

words, *i.e.,* slander, are actionable *per se* in Oregon if, among other categories of statements, they are words 'tending to injure the plaintiff in his or her profession or business.'" 220 Or. App. at 584 (quoting *Marleau v. Truck Ins. Exch.*, 333 Or. 82, 95, 37 P.3d 148 (2001)). "Such words must cast aspersions on the plaintiff's ability to perform essential functions, or must assert that the plaintiff lacks a characteristic necessary to successful performance, of his or her job." *Id.* at 584-85.

B.     First Amendment Limitations on Defamation Claims

The Oregon Supreme Court has recognized that First Amendment protections limit the scope of a claim for defamation. *Neumann*, 358 Or. at 713. The U.S. Supreme Court has limited the scope of defamation claims in terms of both the nature of the speech and the nature of the individual who claims to have been defamed. In general, speech on matters of public concern receives greater protection than speech on matters of only private interest. *See Connick v. Myers*, 461 U.S. 138, 145 (1983). In addition, to be actionable, a statement cannot be a pure expression of opinion but must "imply an assertion of objective fact." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990). The public comment defense protects speech that is (1) on a matter of public concern and (2) not susceptible to being proved true or false. *Lowell v. Wright*, 369 Or. 806, 821, 512 P.3d 403 (2022).

The Oregon Supreme Court has adopted the Ninth Circuit's approach to determining whether statements are protected as expressions of opinion. *Neumann*, 358 Or. at 718 (adopting the framework laid out in *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990)). Under this approach, courts follow a three-part test: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the

defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Id.* at 717.

In *Neumann*, the defendant, Liles, posted a review of a wedding venue online. *Id.* at 719. The review read:

> Disaster!!!!! Find a different wedding venue
>
> There are many other great places to get married, this is not that place! The worst wedding experience of my life! The location is beautiful the problem is the owners. Carol (female owner) is two faced, crooked, and was rude to multiple guest[s]. I was only happy with one thing. It was a beautiful wedding, when it wasn't raining and Carol and Tim stayed away. The owners did not make the rules clear to the people helping with set up even when they saw something they didn't like they waited until the day of the wedding to bring it up. They also changed the rules as they saw fit. We were told we had to leave at 9pm, but at 8:15 they started telling the guests that they had to leave immediately. The 'bridal suite' was a tool shed that was painted pretty, but a shed all the same. In my opinion [s]he will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more.

*Id.*

The Oregon Supreme Court first recognized that "if false, several of Liles's statements are capable of a defamatory meaning" because "Liles ascribed to Neumann conduct that is incompatible with the proper conduct of a wedding venue operator." *Id.* at 719-20. The Oregon Supreme Court also concluded that the statements were written and published and therefore would be libelous *per se* if a jury found that they were false. *Id.* at 720.

Applying the three-part *Unelko* test, the Oregon Supreme Court stated, "From the outset, it is apparent that the review is describing Liles's personal view of Neumann's wedding venue." *Id.* at 720. However, the sentences stating that the plaintiff "is two faced, crooked, and was rude to multiple guest[s]" and "[i]n my opinion [s]he will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more" "could create the impression that Liles was asserting an objective fact," i.e., that the plaintiff had wrongly kept a deposit. *Id.* at 721. Ultimately, the

Oregon Supreme Court concluded that the review as a whole did not leave the impression that the plaintiff had wrongly kept a deposit because it showed that the defendant was a guest at the wedding and suggested that he did not purchase wedding services from the plaintiff. *Id.*

On the second factor, the Oregon Supreme Court noted that the review contained substantial hyperbolic language and exaggerations, which further negated the impression that the defendant was asserting an objective fact. *Id.* On the third factor, the Oregon Supreme Court concluded that the defendant's statements, in the context of the review, were "not provably false." *Id.* at 722. The general use of words like "crooked" did not accuse the plaintiff of committing a specific crime. *Id.* The Oregon Supreme Court concluded that a reasonable jury could not find that the defendant's review implied an assertion of objective fact, and therefore the claim against the defendant was properly dismissed. *Id.*

In contrast, in *Lowell*, the Oregon Supreme Court found that some of the defendant's statements were actionable under the First Amendment. The defendant posted an online review of the plaintiff's piano store. 369 Or. at 810. The review stated that the defendant had walked around the store for 45 minutes before a salesperson assisted him, and the store "smelled like grandma's attic." *Id.* It also said that the salesperson told the defendant that a particular Yamaha piano on display was five years old, and that the plaintiff's store could sell new Steinway pianos. *Id.* The review went on to say that the plaintiff could not sell new Steinway pianos and there were none in the showroom. *Id.* at 811. It concluded by saying that defendant "had been warned about plaintiff's store and now knew that it was true that 'this guy can't be trusted.'" *Id.* The Oregon Supreme Court concluded that the statements in the review that the salesperson had misrepresented the age of the Yamaha piano and misrepresented whether the store could sell new Steinway pianos were susceptible to a true-false analysis, while the statement "this guy can't be

trusted" was not. *Id.* at 833-34. Neither the general tenor of the review nor the use of figurative language, such as saying that the store "smelled like grandma's attic," negated the impression that the writer really was asserting that the salesperson was misrepresenting facts about pianos to customers. *Id.* at 833.

      C.      Application

            i.      Defamation Elements

On the first element of the claim, many of Defendant's statements would tend to expose Plaintiff to contempt or diminish confidence in his leadership abilities because they criticized his spending and hiring decisions as chief and accused him of retaliating against Defendant, conveying the impression that he was a dishonest and incompetent fire chief. For example, in remarks made at the May 2023 CRFR Board meeting, Defendant said of Plaintiff: "He has failed miserably! Over spent District funds, allow unfair treatment of employees, reported verbal and sexual harassment, hires his friends without putting the positions out for the public, lies about the qualifications of his friends which could place employees and the public in harms [sic] way." Melton Decl. Ex. 2 at 2. Defendant does not appear to dispute that some of her remarks painted Plaintiff in a negative light. Rather, she argues that her statements were expressions of opinion on matters of public concern and therefore are not actionable under the First Amendment. Def. Mot. 8. The Court addresses this argument below.

In terms of whether the statements were false, the parties dispute the truth of Defendant's assertion that Plaintiff "g[ot] himself a new vehicle with upgrades wheels, tires & more." Medina Decl. Ex. 2. Plaintiff asserts that this statement was false because the vehicle was ordered by an interim chief, not Plaintiff. Pl. Resp. 6. He cites a purchase proposal submitted in September 2020, before he was hired as chief. Medina Decl. Ex. 7. Defendant responds that this proposal

does not show that the truck was purchased. Def. Reply 6, ECF 46. This statement is not the only basis of Plaintiff's claim, but the Court need not address the others because the analysis is the same for all of them. To the extent Defendant's statements are actionable under the First Amendment, Plaintiff must be permitted to engage in discovery to determine whether they are true or false. While the purpose of Oregon's anti-SLAPP statute is to avoid extended proceedings on claims that improperly chill free speech, the Court must balance this against Plaintiff's right to fully litigate his claims. The Ninth Circuit made clear in *Planned Parenthood* that the Federal Rules of Civil Procedure prevail over the procedural aspects of a state anti-SLAPP statute. 890 F.3d at 834-35. Discovery is necessary before the Court can evaluate whether Plaintiff has a probability of success on showing that the actionable statements are false.

Plaintiff is likely to prevail on the second element of his defamation claim, publication, as Defendant spoke at public board meetings and posted on a public Facebook group. Defendant does not appear to dispute this element.

As to the third element, Plaintiff asserts that Defendant's statements are actionable *per se* because they attack his ability to do his job as Chief. Pl. Resp. 5-8. The Court agrees. The written statements are actionable *per se* regardless of the subject matter. *Neumann*, 358 Or. at 712. As to the spoken statements, a reasonable jury could conclude that Defendant's statements imply the assertion that Plaintiff was unfit for his job because he mismanaged and misused taxpayer funds and made unethical hiring decisions. The ability to manage public funds and the ability to hire qualified employees are important aspects of the job of being a fire chief. Other Oregon cases have found statements actionable *per se* under comparable circumstances. *E.g.*, *Slover v. State Board of Clinical Social Workers*, 144 Or. App. 565, 568-69, 927 P.2d 1098 (1996) (statements that a licensed clinical social worker "engaged in 'A Dubious Therapeutic Technique'" and

actions that "'had a detrimental effect' on his patients" were actionable *per se*); *Bock v. Zittenfield*, 66 Or. App. 97, 99, 672 P.2d 1237, *rev. den.* 296 Or. 486, 677 P.2d 702 (1984) (statement that TV news reporter was fired for "just unsatisfactory coverage over this last weekend on top of another instance of the same thing" was actionable *per se*). Plaintiff is likely to succeed on the third element of his claim.

        ii.     First Amendment Defenses

Relying on *Neumann*, Defendant argues that her statements were expressions of opinion on matters of public concern and thus protected by the First Amendment. Def. Mot. 11. Plaintiff focuses on certain statements that he argues "read as statements of 'fact.'" Pl. Resp. 6. The Court therefore addresses those statements and the context in which they were made.

Plaintiff points to statements in Defendant's remarks made at the May 2023 CRFR Board meeting. Pl. Resp. 5-6. In that board meeting, Defendant stated, "Medina and the Board is [sic] costing the taxpayers thousands." Melton Decl. Ex. 2 at 1. She also stated, "Medina has cut the wages of most employees and I do not think he deserves to be on paid administrative leave." *Id.* She also stated:

> Medina began employment December 2020 and had more than 2 years managing the financials of CRFR.
> - o He added 3 chiefs
> - o A personal administrative assistant
> - o Remodeled his office spending about $600k
> - o Bought himself a new vehicle with upgraded wheels/tires & more
> - o Uses the District credit card for personal lunches costing thousands

*Id.*

Defendant went on to state, "The first Public Records request comes in, followed by other requests and a lawsuit. A Vote of No Confidence is served to the Board. Medina & the Board

decide to go [on] a fishing expedition, trying to find past fault with current employees, past

employees and their families." *Id.*

The remarks continued and then ended with:

The Board has 1 employee, the fire chief. The chief is responsible for all other employees. He has failed miserably! Over spent District funds, allow unfair treatment of employees, reported verbal and sexual harassment, hires his friends without putting the positions out for the public, lies about the qualifications of his friends which could place employees and the public in harms [sic] way.

I urge the Board to do their job and remove Medina as fire chief of CRFR.

*Id.* at 2.

Plaintiff also points to one of Defendant's Facebook posts, which reads in pertinent part:

Just came in from tonight's CRFR board meeting. The Board signed a resolution giving this chief full authority to purchase used ambulances in auction with no limit!

1. Chief gets new remodeled office for $600k while fire stations don't meet minimum standards
2. Chief gets himself a new vehicle with upgraded wheels, tires & more
3. Chief spends our tax money on his lunches, attorneys and other expenses WAY more than any other past chief
4. The taxpayers have to now purchase used equipment because he cannot control his spending!

Medina Decl. Ex. 2.

Plaintiff attaches a second Facebook post from Defendant in which she states in pertinent

part:

I have requested public records from St Helens Fire and CRFR for over 30 years. I do not believe anything this fire chief says. He lied about even knowing his friend the finance administrator he hired without publicly posting the position. It was budgeted at approx $70k and he is making $138k. When public records were requested for CRFR also paying his relocation expenses from FL to OR, CRFR replied there were none. Then it is revealed they paid $5k. This Admin lies.

The CPA hired even stated he has not opened all the boxes or finished yet this Admin wanted to smear people who have spoke [sic] out and filed suit before the new Board took office July 1.

Medina Decl. Ex. 8.

Both parties attach more extensive statements from Defendant, but the Court will not reproduce them here. They generally address similar concerns to those reflected above.

Reviewing Defendant's statements, the Court concludes that some imply assertions of objective fact and are actionable. On the first factor of the *Unelko* test, the general tenor of Defendant's statements does not negate the impression that she was asserting objective facts. The overall tenor of Defendant's statements is strongly critical of Plaintiff and indicates that Defendant was angry and frustrated with how CRFR was being run. This criticism was grounded in examples of Plaintiff's conduct, such as spending a particular amount on a new office or buying a new vehicle, and hiring individuals who were not qualified at salaries above the posted amount. These statements imply the assertion that Plaintiff was misusing taxpayer funds and hiring employees for reasons other than merit. Defendant's references to requesting and receiving public records also imply the assertion that she can prove her accusations against Plaintiff (or at least believes she could do so if she received responses to her records requests). In her remarks at one Board meeting, Defendant accused Plaintiff and others of retaliating against her for requesting public records. Melton Decl. Ex. 3.

On the second factor, Defendant sometimes used hyperbolic language. *E.g.*, Melton Decl. Ex. 2 at 2 ("He has failed miserably!"), Ex. 3 at 2 ("Medina and Sanchez have no idea how to be honest leaders[.]"); Medina Decl. Ex. 2 ("The taxpayers have to now purchase used equipment because he cannot control his spending!"). But Defendant's detailed recitation of events and purported facts, as well as her listing of questions she wishes the Board to consider, implied that she was asserting facts that could be proved true or false, not simply expressing her opinion. Her use of hyperbolic language does not negate that impression.

On the third factor, assertions about spending particular amounts on particular items or services can generally be proved or disproved. The amount that was spent on an office or a vehicle, the authority Plaintiff was given to spend on certain items, and the salaries and qualifications of CRFR employees, are all capable of true-false analysis. Likewise, Defendant's assertion that Plaintiff lied about whether CRFR spent money for a new employee's relocation can be proved or disproved. In contrast, Defendant's assertion that Plaintiff "has failed miserably!" and similar remarks are expressions of opinion that cannot be proved or disproved.

This case is closer to *Lowell* than *Neumann*. Defendant's statements are unlike the review in *Neumann*, in which the defendant generally accused the plaintiff of being rude and "a crook" and speculated that she would try to keep someone's deposit. Similar to the review in *Lowell*, Defendant directly or impliedly asserted facts about spending and hiring that can be proved true or false. And as in *Lowell*, the tenor of her statements and occasional use of hyperbolic language did not negate the overall impression that she was asserting those facts. While her conclusion that Plaintiff "has failed miserably!" is an expression of opinion that is not actionable, the underlying factual assertions leading to Defendant's conclusion that Plaintiff failed at his job are actionable. *See Lowell*, 369 Or. at 834. In sum, the Court concludes that some of Defendant's statements, if false, are actionable under the First Amendment.

Plaintiff also acknowledges that because he was a public official at the time Defendant made the statements and they concerned his actions as chief, he must show that Defendant made them with knowledge that they were false or in reckless disregard of whether they were true or false. Pl. Resp. 6 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). In asserting he can meet this requirement of actual malice, Plaintiff relies on *Victoria v. Le Blanc*, 168 Or. App. 586, 7 P.3d 668 (2000). In *Victoria*, the defendant sent two letters to the local

newspaper that the plaintiff alleged were intended to convey, and did convey, the impression that the plaintiff, a former city administrator, had misappropriated city funds during her tenure. 168 Or. App. at 589. The Oregon Court of Appeals held that *Sullivan* applied even though the plaintiff was no longer city administrator because the letters treated her as a public official and attacked her for actions taken while she was still city administrator. *Id.* at 591. The Oregon Court of Appeals also held that a jury could reasonably find that the defendant either did not believe the plaintiff had misappropriated city funds or made no attempt to determine whether she had done so. *Id.* at 591-92. The defendant had testified that his information about an alleged secret bank account came from his attendance at city council meetings, and admitted on direct questioning that he did not think the plaintiff was dishonest or was trying to steal or conceal funds. *Id.* at 592.

Defendant argues that Plaintiff has failed to offer substantial evidence that she acted with malice in making her statements. Def. Reply 13. The parties dispute whether and how the Board limited Plaintiff's ability to bid for certain items for CRFR. Pl. Resp. 10 n. 8; Def. Reply 13. Consistent with the Ninth Circuit's directive to allow discovery when a defendant attacks the factual sufficiency of a claim, the Court concludes that discovery must be permitted here. The factual dispute over whether Defendant made the statements with malice is material to the determination of whether Plaintiff is likely to succeed on his claims against Defendant.

D.    Privilege Defenses

Defendant also argues that her statements about Plaintiff are privileged. Def. Mot. 13. "Oregon recognizes the defenses of qualified privilege and absolute privilege to allegations of defamation. The former requires a plaintiff to prove that a defendant acted with actual malice;

the latter bars the defamation claim altogether." *DeLong v. Yu Enterprises*, 334 Or. 166, 170, 47 P.3d 8 (2002). Defendant asserts that both privileges apply. Def. Mot. 13-17.

        i.      Absolute Privilege

The Oregon Supreme Court has recognized an absolute privilege "in very limited circumstances." 334 Or. at 171. It "'is practically limited to legislative and judicial proceedings and other acts of state.'" *Id.* (quoting *Grubb v. Johnson et al.*, 205 Or. 624, 631, 289 P.2d 1067 (1955)). "[T]he absolute privilege applies when 'the public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation.'" *Id.* (quoting *Wallulis v. Dymowski*, 323 Or. 337, 349, 918 P.2d 755 (1996)). Under that standard, "statements that are made as part of judicial and quasi-judicial proceedings are absolutely privileged." *Id.* Statements made by legislative and executive officials in the course of performing their duties have also been held to be absolutely privileged. *Johnson v. Brown*, 193 Or. App. 375, 381, 91 P.3d 741, *decision clarified on reconsideration*, 194 Or. App. 486, 95 P.3d 235 (2004) (citing *Noble v. Ternyik*, 273 Or. 39, 41-45, 539 P.2d 658 (1975) and *Shearer v. Lambert*, 274 Or. 449, 452-54, 547 P.2d 98 (1976)).

Defendant argues that her statements are absolutely privileged. Def. Mot. 13-15. She asserts, "Speaking at a public meeting being held by a governmental entity about concerns a person has about how her tax dollars are being spent and how the governmental entity is being managed should be absolutely privileged." *Id.* at 15. The Court disagrees. Defendant did not speak as part of a judicial or quasi-judicial proceeding, or as a legislative or executive employee in the course of her duties, and applying the absolute privilege here would be inconsistent with Oregon caselaw.

As recognized by the Oregon Supreme Court in *De Long*, most of the cases on which Defendant relies involve statements made as part of judicial or quasi-judicial proceedings. *See Ramstead v. Morgan*, 219 Or. 383, 401, 347 P.2d 594 (1959) (absolute privilege attached to statements in letter to Oregon State Bar grievance committee concerning lawyer's alleged misconduct, in light of that committee's quasi-judicial function); *Moore v. W. Lawn Mem'l Park, Inc.*, 266 Or. 244, 250-51, 512 P.2d 1344 (1973) (absolute privilege attached to letter written to State Board of Funeral Directors and Embalmers when that board was sitting in its quasi-judicial function as a licensing body); *Binder v. Oregon Bank*, 284 Or. 89, 91, 585 P.2d 655 (1978) (absolute privilege attached to statement in will); *Chard v. Galton*, 277 Or. 109, 113, 559 P.2d 1280 (1977) (absolute privilege should apply to lawyer's letter to adverse party's insurer made before filing of civil complaint, because "lawyer [should] enjoy the same degree of freedom in settlement of his client's case as that which he enjoys in its actual pleading or trial"). While *Binder* and *Chard* did not involve statements made during judicial or quasi-judicial proceedings, they did involve statements in documents that were important to the determination of legal rights in future judicial proceedings: probate of a will and a lawsuit over insurance coverage. None of these cases apply here because nothing suggests that Defendant made her statements during a judicial or quasi-judicial proceeding or as part of initiating such proceedings.

Defendant also relies on *Ducosin v. Mott*, 292 Or. 764, 642 P.2d 1168 (1982). In *Ducosin*, the Oregon Supreme Court held that a communication to a county medical examiner suggesting a possible homicide was absolutely privileged based on the importance of investigating a possible criminal act causing death and because the communication was an initial step in a judicial proceeding. 292 Or. at 768-69. However, in *DeLong*, the Oregon Supreme Court found this conclusion "somewhat surprising, particularly in light of the prevailing

19 – OPINION & ORDER

common-law rule that statements accusing others of crime were accorded a qualified rather than

an absolute privilege." 334 Or. at 172. Without fully reevaluating the holding in *Ducosin*, the

*DeLong* court concluded that only a qualified privilege applied to an informal report of potential

criminal activity to police. *Id.* at 174. *Ducosin* is not a guide here. The Oregon Supreme Court

has already cabined its holding to exclude situations much closer than this case.

Plaintiff argues that this case is closer to *Demers v. Meuret*, 266 Or. 252, 255-56, 512

P.2d 1348, 1349 (1973). Pl. Resp. 8. In *Demers*, the defendant made allegedly slanderous

statements at a meeting of a city's Airport Commission. 266 Or. at 253. The plaintiff was the

president of a business that operated the airport under a lease from the city. *Id.* The Oregon

Supreme Court stated:

> The allegations in the complaint do not state or imply that the meeting of the Airport
> Commission was to make a quasi-judicial determination of any matter concerning
> plaintiff or the lease. There is no allegation that the words spoken by defendant
> would cause the Airport Commission to commence a quasi-judicial proceeding.
> The inference is to the contrary. A public body usually does not act in a quasi-
> judicial capacity when it considers whether to cancel or renew a lease.

*Id.* at 254-55. Because the complaint alleged that the board was acting in a legislative or

administrative capacity, not a judicial capacity, only a qualified privilege could attach. *Id.* at 255-

57. At least on the record as it stands, the Court agrees with Plaintiff that this case is like

*Demers*, and therefore only a qualified privilege might attach here.

ii.     Qualified Privilege

"Generally, a qualified privilege exists to protect three kinds of statements: (1) those

made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's

interests; or (3) those made on a subject of mutual concern to the defendant and the persons to

whom the statement was made." *DeLong*, 334 Or. at 170. "A 'qualified privilege' requires the

plaintiff to prove that the defendant abused the 'privileged occasion.'" *Id.* Thus, "[w]hen a

defendant properly raises a qualified privilege, the plaintiff has the burden of proving that the defendant lost that privilege." *Lewis v. Carson Oil Co.*, 204 Or. App. 99, 104, 127 P.3d 1207 (2006).

> Abuse occurs if the publisher disbelieves or lacks reasonable grounds to believe that the defamatory statement is true, if the statement is made for purposes outside the scope of the privilege, if the statement is made to someone who is not reasonably believed to be necessary to accomplish the purpose of the privilege, or if the statement includes defamatory matter that is not reasonably believed to be necessary to accomplish the purpose of the privilege.

*Id.*

Defendant argues that her statements were qualifiedly privileged because she spoke on subjects of mutual concern to her and those to whom she made the statements. Def. Mot. 16. The Court agrees with Defendant that "[h]ow the CRFR is being run is something that is of mutual concern to those in the community and those on the CRFR Board." *See id.* Plaintiff does not dispute this.

Plaintiff argues that Defendant abused the privilege. Plaintiff points to Defendant's statement that she has watched CRFR for 37 years, and states that this "leads Plaintiff to believe that Defendant would know how to access public meetings in order to verify information for which she talks about. However, Defendant posted and made statements that were false with willful, wanton and malicious intent to defame Defendant." Pl. Resp. 9-10. Plaintiff states that Defendant could have reviewed materials posted online and seen that an interim chief, not Plaintiff, approved the vehicle purchase that Defendant criticized. *Id.* at 10. The Court also notes that the FAC alleges that Defendant made her statements to try to prevent Plaintiff from taking away benefits to which she was not entitled. FAC ¶¶ 34, 111, 114. If true, that would be a purpose outside the scope of the privilege and would defeat the privilege. Defendant responds that Plaintiff has failed to provide substantial evidence that she abused her privilege. Def. Reply

21 – OPINION & ORDER

14. The Court has already held that discovery into Defendant's mental state is necessary to resolve the Motion.

      In sum, because the Motion raises factual disputes and not purely legal ones, it is more properly treated as a motion for summary judgment with accompanying discovery. The Court therefore declines to rule on the Motion at this time and instead will set a scheduling conference with the parties.

<b>CONCLUSION</b>

      The Court RESERVES RULING on Defendant Rhonda Melton's Motion to Strike and Dismiss [37]. The Court will further consider the Motion after discovery has been conducted consistent with this Opinion and Order and the parties have submitted supplemental briefing on the outstanding factual issues.

      IT IS SO ORDERED.

DATED:_____May 15, 2024_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge